JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 CIV 5002**

---

YEHUDA KATZ,
on behalf of himself and the class,

                              Plaintiff,

v.

EATALY USA LLC;
EATALY NY LLC;
UNICREDIT GROUP

                             Defendants.

---

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

*[Filed stamp: JUN 26 2012 U.S.D.C. S.D.N.Y. CASHIERS]*

Now comes Yehuda Katz ("Plaintiff"), on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of all others similarly situated against Defendants, Eataly USA LLC, Eataly NY LLC and Unicredit Group (cumulatively the "Defendants"), alleging violations of the Electronic Fund Transfer Act, 15 U.S.C.§ 1693 *et seq.* and its implementing regulations 12 C.P.R. § 205 *et seq.* (hereinafter referred to collectively as the "EFTA").

2.     The Congressional findings and declaration of purpose regarding the EFTA are as follows:

    (a) Rights and liabilities undefined

The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to the unique characteristics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions and intermediaries in electronic fund transfers undefined.

    (b)     Purposes

It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

15 U.S.C. § 1693.

3. Among other things, the EFTA imposes certain disclosure requirements upon operators of automated teller machines ("ATMs").

4. 15 U.S.C. § 1693b(d)(3)(A) requires any ATM operator who imposes fees on consumers in connection with electronic fund transfers to provide notice of the fact that the fee is being imposed and the amount of the fee.

5. "Electronic fund transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone ...." 15 U.S.C. § 1693a(6).

6. 15 U.S.C. § 1693b(d)(3)(B) identifies the location where the required notice must be posted as follows:

(B) Notice requirements

(i) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such paragraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

(ii) On the screen

The notice required under clauses (i) and (ii) subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction ....

7. The relevant implementing regulation, 12 C.F.R. § 205.16(c) reinforces EFTA's statutory posting requirement, mandating that the mandatory fee notice: 1) be posted in a "prominent and conspicuous location" on or at the ATM machine; and 2) "on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying the fee." 12 C.F.R. § 205.16(c)(1) and (2).

8. 15 U.S.C. § 1693b(d)(3)(C), and its implementing regulation, 12 C.F.R. 205.16(e), prohibit ATM operators from imposing a fee on a consumer unless EFTA's notice and posting requirements are followed by the ATM operator.

9. Specifically, 15 U.S.C. § 1693b(d)(3)(C) states, in relevant part:
(C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless----
   (i) The consumer receives such notice in accordance with subparagraph (B) ...

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693 *et. seq.*

11. Plaintiff's claims asserted herein arose in this judicial district and Defendants are the operator of the ATM located in this judicial district.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

13. Plaintiff, Yehuda Katz, is and at all times relevant hereto was a resident of Brooklyn, New York.

14. Defendant, Eataly NY LLC, is a New York limited liability corporation with an address of c/o Moses & Singer, LLP, ATTN: Cathy J Frankel, Esq. at 405 Lexington Ave. in New York, NY 10174.

18. Defendant, EATALY USA LLC, is a New York limited liability corporation with an address of c/o Moses & Singer, LLP, ATTN: Cathy J Frankel, Esq. at 405 Lexington Ave. in New York, NY 10174.

15. Defendant, Unicredit Group is a banking entity and/or corporation with an address of 150 East 42nd Street in New York, NY.

19. The ATM receipt has the name Unicredit Group on it. See <u>Exhibit A</u>.

21. Defendants are each automated teller machine operators, as that term is defined by 12 C.F.R. § 205.16(a) which states: "Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which the inquiry is made."

## FACTS RELATED TO PLAINTIFF'S TRANSACTION

22. Plaintiff made a cash withdrawal from the ATM inside the store "Eataly" on March 12th, 2012 at 200 5th Ave. in New York, NY and was charged a $2 surcharge for the withdrawal. See Exhibit A.

23. At the time of the above-described electronic transactions, Plaintiff did not maintain any accounts with any of the Defendants.

24. However, at the time that the above-described transaction occurred, there was no notice posted "on or at" the ATM operated by the Defendants apprising consumers that a fee would be charged for use of the ATM.   See photo in Exhibit B.

25. Because Defendants did not post the required notice, it was not permitted to charge a usage fee to Plaintiff and other class members.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this class action on behalf of himself and all other similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

27. Plaintiff seeks to represent a class of persons to be defined as follows:

All persons who: 1) where charged a "terminal owner fee" at this ATM operated by the Defendants when such persons made an electronic fund transfer and/or balance inquiry where, 2) no notice indicating that such fee was to be charged was posted on the outside of the ATM machine, 3) on or after a date one year prior to the date of the filing of this action and on or before a date 20 days after the filing of this action.

28.     <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

29.     Plaintiff is informed and believes, and thereon alleges, that there are at minimum, fifty members of the class described above.

30.     The exact size of the class and the identities of the individual members thereof are ascertainable through Defendants' records.

31.     Members of the class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notices, first class mail, a notice on the ATM or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by this Court.

32.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful and willful conduct.

33.     Plaintiff and members of the class were each consumers who used an ATM machine operated by the Defendants to make an electronic fund transfer or balance inquiry and were charged a terminal owner fee, notwithstanding that the posting providing notice of the fee required by EFTA "on or at" Defendants' terminal were not present.

34. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class.

35. The questions of fact and law common to the class predominate over questions which may

affect individual members and include the following:

a. Whether, under 15 U.S.C. § 1693b(d)(3)(A) and 12 C.F.R. 205.16, Defendants were, at all relevant times, automated teller machine operators that imposed a fee on consumers for providing host electronic fund transfer services to those consumers;

b. Whether Defendants complied with the notice requirements of 15 U.S.C. § 1693(d)(3)(B) and 12 C.F.R. 205.16; and,

c. Whether Plaintiff and members of the class are entitled to statutory damages, costs and/or attorneys' fees for Defendant's acts and conduct.

36. <u>Adequacy of Representations</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who is competent and experienced in the prosecution of consumer class action litigation.

37. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of the claims of the class. While the aggregate damages which may be awarded to the members of the class are likely to be substantial, the damages suffered by the individual members of the class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the class. The likelihood of the individual members of the class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court

system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## SUBSTANTIVE VIOLATION

38. 15 U.S.C. § 1693b(d)(3)(A) provides that as a prerequisite to imposition of a usage fee upon a consumer for host transfer services, an automated teller machine operator must provide notice to the consumer consistent with subparagraph (B) of that statutory section.

39. Subparagraph (B) of 15 U.S.C. § 1693(d)(3) provides in relevant part:

(B) Notice requirements

(i) On the machine

> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

40. In turn, subparagraph (c) of 15 *U.S.C.* § 1693b(d)(3) states, in relevant part:

> (C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer
>
> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless------
>
> (i) The consumer receives such notice in accordance with subparagraph (B) ...

41. EFTA's statutory notice requirements are reinforced by the implementing regulations set forth at 12 C.F.R. § 205.16.

42. Defendants violated the notice requirements of EFTA in connection with providing host transfer services to Plaintiff and the Class.

43. Defendants were prohibited from imposing any usage fee or similar fee for providing host transfer services because it failed to comply with EFTA's notice requirements.

44. 15 *U.S.C.* § 1693m provides that Defendant shall be liable to Plaintiff and Class for violations of 15 *U.S.C.* § 1693 *et seq.* in the amount of, *inter alia,* statutory damages to be determined by the Court, the costs of this action and reasonable attorneys' fees.

45. Plaintiff seeks the imposition of statutory damages, costs of suit and attorneys' fees.

46. Because, on information and belief, all Defendants acted jointly to effectuate operation of the ATM at Issue, they are jointly and severally liable. See Exhibit C.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the class, prays for:

a. An order certifying the class and appointing Plaintiff as the representative of the class, and appointing counsel for Plaintiff as counsel for the class;

b. An award to Plaintiff and the members of the class of statutory damages;

c. Payment of costs of suit; and,

d. Payment of reasonably attorneys' fees.

**THE PLAINTIFF**

Dated: New York, NY
June 5, 2012

By: /s/
The Law Offices of Shimshon Wexler, PC
Shimshon Wexler
2710 Broadway, 2nd Floor
New York, NY 10025
(212)760-2400
swexleresq@gmail.com
*Attorney for Plaintiff*

### Trial By Jury

Plaintiff requests a trial by jury.

### Notice of Assignment

All rights relating to attorneys' fees have been assigned to counsel.

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

# UniNews
**UniCredit Magazine**

Accessible version · Group · Contact Us · RSS ·

Advance search
Login
Registration form

Home > Group News > UniCredit > UniCredit & Eataly

Home / Headlines / Economic Analysis / Group News / Focus on /

● UNICREDIT

September 10, 2010

## UniCredit & Eataly

**NEW YORK** - The day after the opening of Eataly on 31 August 2010, attended by New York Mayor, Michael Bloomberg, the Daily News commented the event, for which New Yorkers had queued up from the morning, with: "Whoa, that's Italian!". UniCredit is a partner of this great project that intends spreading and commercialising Italian food and wine culture.

In the large new structure on Fifth Avenue, the seventh opening in the world in less than three years, visitors will find an innovative and lively UniCredit corner entirely built and dedicated to Made in Italy. New Yorkers, Italian and foreign tourists can easily withdraw cash from a bilingual ATM; they can also stop and connect to the Internet, in a small office workspace featuring an innovative design: six monitors project videos on the Group's economic, financial, art and sport projects, and a LED ticker provides real-time information on the country's main events.

*"Eataly is an initiative that combines an innovative commercial approach with the ability to support and enhance Italy's excellence. This is an important partnership for UniCredit, in line with the Group's commitment to support innovation, the territory and Italian business"* stated **Antonella Massari**, UniCredit's Group Identity and Communications Manager, who along with the top managers of the leading Made in Italy brands attended the event held in New York for the opening of the new "Best in Italy" store, created by founder Oscar Farinetti.

As in the first outlet, opened in Turin in 2007, and in the other five, spread between Piedmont and Japan, visitors can study, buy and learn how to savour and cook authentic Italian food in the new NYC Eataly, which is divided into thematic areas. The building is in the beating heart of Manhattan, at 200 Fifth Avenue, on the corner of Broadway. It overlooks Madison Square and occupies an entire block.

● GROUP NEWS
Italy
UniCredit
Central Eastern Europe
Ancillary Businesses

● SECTION INDEX
The social dimension
Solidarity redoubled
The Brueghel dynasty in...

Other articles

● SITE UTILITIES
UniNews Archive
UniNews Profile
Letters to the Editor

● OVER TO YOU
Email this article
Email your comment
Write an article for UniNews

Printable version   Versione in italiano                                Top | Back | Home | Map

Copyright © UniCredit Spa · System requirements · Colophon · Credits · Accessible version